IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL DOBKIN, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>ENTERPRISE FINANCIAL GROUP, INC., a Texas corporation, and PRECISE ENTERPRISES LLC d/b/a Precise Auto Protection, a California limited liability company,<br><br>    *Defendants*. | Case No. |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Michael Dobkin ("Dobkin") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Enterprise Financial Group, Inc. ("EFG") and Precise Enterprises LLC d/b/a Precise Auto Protection ("Precise Enterprises") (collectively, "Defendants") to stop their practice of making unsolicited calls to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1.      Defendant EFG is a company that sells a variety of consumer-related products and services for automobile dealers and manufacturers, credit unions, banks, and retailers. EFG sells its products and services—such as after-market auto warranties—directly to consumers and also through third parties partners that it describes as its "clients."

2.      Defendant Precise Enterprises is one such "client" that actively sells Defendant

EFG's services (on EFG's behalf). On its website, Precise Enterprises describes itself as "an independent nationwide company [that] market[s] vehicle service contracts on behalf of leading 3rd party administrators." However, the only third party that Precise Enterprises markets for is Defendant EFG.

3. Unfortunately for consumers, in an attempt to market and sell EFG's products and services, Defendants repeatedly made (or directed to be made on their behalf) unsolicited promotional telephone calls to Plaintiff and the other members of the putative Class's telephones, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4. By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of the Class actual harm, including the aggravation and nuisance, as well as the invasion of privacy, that necessarily accompanies the receipt of unsolicited and harassing telephone calls and the monies paid to their telephone carriers for the receipt of such telephone calls.

5. The TCPA was enacted to protect consumers from unsolicited phone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

6. Plaintiff Michael Dobkin is a natural person and citizen of the State of New Jersey.

7. Defendant Enterprise Financial Group, Inc. is a corporation existing under the laws of the State of Texas with its principal place of business located at 122 West Carpenter

Freeway, Irving, Texas 75039. Defendant EFG regularly conducts business throughout this District, the State of New Jersey, and the United States.

8.  Defendant Precise Enterprises LLC (d/b/a Precise Auto Protection) is a limited liability company existing under the laws of the State of California with its principal place of business located at 1200 East Colorado Boulevard, Pasadena, California 91106. Defendant Precise Enterprises regularly conducts business throughout this District, the State of New Jersey, and the United States.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA, which is a federal statute. The Court has personal jurisdiction over Defendants because they conduct significant business transactions within this District, solicit consumer sales in this District, and committed tortious acts in this District.

10. Venue is proper in this District under 28 U.S.C. § 1391 because Defendants conduct significant business transactions in this District, solicit business in this District, and because a substantial part of the events giving rise to the action occurred in this District, inasmuch as Defendants made the unsolicited calls to Plaintiff and putative Class members' located in this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

11. Defendants EFG and Precise Enterprises work together to market and sell EFG's after-market auto warranties to consumers throughout the United States. Unfortunately for consumers, Defendants' joint method of marketing such auto warranties is through unsolicited telemarketing calls.

12. Defendants made (and continue to make) these telemarketing calls to consumers nationwide without their prior express consent to do so.

13. While Defendants' scheme is straightforward, a brief explanation of each of their respective roles follows. Defendant EFG purports to provide certain products and services, including after-market auto warranties. Precise Enterprises, on the other hand, carries out its part by marketing EFG's products and services through widespread telemarketing.

14. As previewed above, one of Precise Enterprises's primary methods of marketing EFG's products and services is outbound telemarketing calls to consumers' telephones. Defendants jointly benefit from these calls through a revenue sharing agreement where each is paid when an EFG product is sold by Precise Enterprises.

15. When Precise Enterprises contacts a consumer, its representatives may initially identify itself as "Precise Auto Protection" or the "Vehicle Processing Center," and promotes the after-market auto warranties as its own product. In other instances, the telemarketers will identify themselves as calling from EFG, or on behalf of EFG, or for the purpose of selling EFG's products. Either way, as the representative's pitch continues, it becomes readily apparent that the product offered actually belongs to Defendant EFG and that Precise Enterprises is simply acting as EFG's telemarketing agent.

16. For example, during these unsolicited telemarketing calls, Defendants' representatives direct consumers to the website "TheTechChoice.com," which, in turn, immediately redirects the user to the website "TechChoice.EFGcompanies.com," a subdomain of Defendant EFG's website.

17. Likewise, Defendants' telemarketers promote specific types of auto warranty packages over the phone—including the "Basic," "Select," "Choice," and "Premium"

packages—which appear on both Precise Enterprises's website (Figure 1)[1] and Defendant EFG's website (Figure 2).[2]



**(Fig. 1)**

**(Fig 2.)**

---

[1]   Precise Auto Protection Plans, http://preciseautoprotection.net/our-plans (last accessed March 28, 2014).
[2]   EFG Companies, http://www.efgcompanies.com/products/repair-maintenance-products/map-for-new-and-pre-owned.aspx (last accessed March 28, 2014).

18.     Further, both websites contain virtually identical marketing statements for the after-market auto warranties. (*See* Figures 3 and 4, showing screenshots of Defendants Precise Enterprises's[3] and EFG's[4] websites, respectively.)

> - Whether the car is fresh from the factory or, has been around the block a few times. Total protection is one of the most important items you can add to the value of the vehicle.
> - Extended vehicle service policies provide FOUR levels of coverage for both new and pre-owned vehicles. Eligible mileage levels of Zero to 199,000 along with Roadside assistance.
> - The Certified Wrap plan offers another layer of coverage that begins on the in-service date and wraps around the manufacturer's coverage.
> - These Premium Extended Vehicle Service Policies offer several eligible plans to fit the Customer's needs.

(**Fig. 3.**)

> Whether a car is fresh from the factory or has been around the block a few times, MAP protection for new and pre-owned cars is one of the most important steps you can take to go beyond mere transactions to build meaningful — and lucrative — relationships. A MAP vehicle service contract provides four levels of coverage for new and used vehicles from zero to 90,000 miles at the point of sale, with added benefits like roadside assistance. We even offer a MAP Certified Wrap for qualifying vehicles, adding another layer of coverage that begins on the in-service date and wraps around the manufacturer's certified coverage. With MAP vehicle service contracts, customers can select the mileage term for their coverage.

(**Fig. 4.**)

19.     Moreover, Defendant EFG actively promotes it close involvement with its "clients" like Precise Enterprises. For example, Defendant EFG website[5] represents that it

---

[3]     Precise Auto Protection Plans, http://preciseautoprotection.net/our-plans (last accessed March 28, 2014).
[4]     EFG Companies, http://www.efgcompanies.com/products/repair-maintenance-products/map-for-new-and-pre-owned.aspx (last accessed March 28, 2014).
[5]     F & I Development, http://www.efgcompanies.com/services/fi-development.aspx (last accessed March 28, 2014).

provides one-on-one consulting, sales training, and implementation of marketing and sales procedures. (*See* Figures 5 below.)



(**Fig. 5.**)

20.     Likewise, Defendant EFG's website also represents that is provides extensive sales assistance[6] and marketing materials[7] to it's clients. (*See* Figures 6 and 7 below.)

---

[6]     The Transcend Group, http://www.efgcompanies.com/services/the-transcend-group.aspx (last accessed March 28, 2014).

[7]     Traditional Marketing & PR Support, http://www.efgcompanies.com/services/marketing-services/traditional-marketing-and-pr-support.aspx (last accessed March 28, 2014).

### The Transcend Group™

**No One Does it Like EFG**

Ask yourself these questions. How are you:

- Overcoming the challenges of an underperforming or average sales team?
- Averting the costs of high turnover?
- Adapting a culture and behavioral set that drives profit and increases revenue?

Select the Right Sales Training Program

Do you have easy answers to those questions? Probably not. The EFG Transcend Group goes beyond traditional methodologies that temporarily fuel sales teams without changing culture, behaviors and attitudes for sustainable benefit. We are a team dedicated to identifying and changing behaviors to transform teams into Top Performers. We combine proven, multisensory learning principles with interactive tools to target the skills needed to:

- Enhance bottom line productivity
- Close more sales
- Increase loyalty
- Build your brand

(**Fig. 6.**)

### Traditional Marketing & PR Support

**Marketing Services and Products: Coordinating your message across multiple channels**

Even with the rising popularity of digital marketing and social media networks, traditional marketing services and products still play an important role. EFG supports our customized consumer protection programs with branded collateral. We generate compelling content to outline features and highlight benefits. And our intensive client engagement model enables EFG to act as an extension of your team, providing strategic insights and turnkey services to drive traffic and maximize sales. Services include:

**Fast Fact: Traditional Marketing Still Matters**
While online channels are valuable components of a comprehensive marketing strategy, it's important to include traditional elements such as brochures, ads, and press releases. The goal is to reach prospective customers via multiple touchpoints — both on and offline.

(**Fig. 7.**)

21. As such, Defendants act in a joint manner and as a singular entity to sell auto warranty services through telemarketing. Put another way, Defendant EFG simply outsourced the telesales of its products to Defendant Precise Enterprises. Still, by its own statements above,

8

Defendant EFG is heavily involved with Precise Enterprises's sales practices and marketing procedures, and has full visibility into Precise Enterprises's telemarketing practices.

22. Worse yet, Defendants made (and continue to make) these telemarketing calls to consumers even after they expressly and repeatedly requested that the calls stop.

23. Moreover, Defendants made (and continue to make) calls to consumers who have taken affirmative steps to avoid calls from all telemarketers by placing their telephone numbers on the National Do Not Call Registry.

24. In fact, consumer complaints online regarding unwanted phone calls from Defendants (at a variety of phone numbers) are legion.[8]

25. Defendants knowingly made (and continue to make) these telemarketing calls without the prior express consent of the call recipients and knowingly continued to call them after requests to stop. In so doing, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

### FACTS SPECIFIC TO PLAINTIFF DOBKIN

26. Starting in or around February 2014, Plaintiff began receiving calls to his landline telephone from the phone number (973) 330-3563.[9]

27. Plaintiff and his wife answered many of these calls and expressly requested that their number be removed from the call list and that the calls cease. Yet, the calls from (973) 330-3563 continued.

---

[8] *See, e.g.,* 800notes.com/Phone.aspx/1-603-374-8088, 800notes.com/Phone.aspx/1-704-234-5957, 800notes.com/Phone.aspx/1-888-926-7277, 800notes.com/Phone.aspx/1-218-331-9135, 800notes.com/Phone.aspx/1-817-752-0697, 800notes.com/Phone.aspx/1-517-586-0291, 800notes.com/Phone.aspx/1-407-956-5105, 800notes.com/Phone.aspx/1-602-888-0724 (last accessed March 28, 2014).

[9] Numerous consumer complaints exist online regarding calls from (973) 330-3563. *See* http://800notes.com/Phone.aspx/1-973-330-3563 (last accessed March 28, 2014).

28. Because the calls would not stop, Plaintiff answered an additional call from (973) 330-3563 to inquire about the company making the calls. On that call, the telemarketer indicated that he was calling from the "Vehicle Processing Center." The telemarketer further stated that he wanted to help Plaintiff "renew" his car's warranty. When Plaintiff asked for the telemarketer's actual company name, the telemarketer transferred him to a supervisor who indicated that he was calling from Precise Auto Protection. The supervisor reiterated that he was calling to offer the "Choice" after-market auto warranty package to Plaintiff for $3,600. (*See* Figures 1 and 2 above.)

29. During this call, Plaintiff also requested that the representative provide him with a website where he could find out more information about the purported warranty. In response, the telemarketer directed him to "TheTechChoice.com," an ESG website. The telemarketer also provided Plaintiff with the telephone number (888) 926-7277, which belongs to Precise Enterprises and appears on its website.[10]

30. Plaintiff does not have a relationship with Defendants, has never provided his telephone number to Defendants, or requested that Defendants call him or offer him their services. Simply put, Plaintiff has never provided his prior express consent to Defendants to place calls to him.

31. Likewise, Plaintiff's landline telephone number has been registered with the National Do Not Call Registry since December 28, 2011, for the explicit purpose of avoiding telemarketing calls just like those alleged in this case.

32. In the previous twelve months, Plaintiff has received numerous, and no less than four, phone calls from Defendants, including several calls after he requested that the call cease.

---

[10] Numerous consumer complaints exist online regarding calls from (888) 926-7277. *See* http://800notes.com/Phone.aspx/1-888-926-7277 (last accessed March 28, 2014).

33. Ultimately, Defendants were and are aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them.

## CLASS ALLEGATIONS

34. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class defined as follows (the "Class"):

> All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendants that promoted Defendants' products or services; (3) within a 12-month period; and (4) for whom Defendants had no current record of consent to place such calls to him or her.

Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) the legal representatives, successors, or assigns of any such excluded person; and (5) Plaintiff's counsel and Defendants' counsel.

35. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have made telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendants' records.

36. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class

11

include, but are not necessarily limited to the following:

      (a)    Whether Defendants' conduct constitutes a violation of the TCPA;

      (b)    Whether Defendants systematically made telephone calls to members of the Class who Defendants did not have current record of consent to make such telephone calls;

      (c)    Whether Defendants systematically made telephone calls to members of the Class whose telephone numbers were registered with the National Do Not Call Registry; and

      (d)    Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

37. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Class.

38. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law

applicable only to Plaintiff. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the other members of the Class have suffered similar harm and damages as a result of Defendants' unlawful and wrongful conduct.

39. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Class)

40. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

41. 47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

42. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "No person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

43. 47 C.F.R. § 64.1200 (e), provides that § 64.1200 (c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

44. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive

telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

45.     Defendants violated § 64.1200 (c) by initiating telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

These consumers requested not to receive calls from Defendants, as set forth in § 64.1200 (d)(3).

46. Defendants and/or their agents made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Class never provided any form of consent to receive telephone calls from Defendants and/or Defendants do not have a current record of consent to place telemarketing calls to them.

47. Defendants violated § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

48. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone call within a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

49. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Michael Dobkin, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff Michael Dobkin as the representative of the Class, and appointing his counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendants to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

          Respectfully Submitted,

          **MICHAEL DOBKIN**, individually and on behalf of Class of similarly situated individuals,

Dated: March 29, 2014        By: /s/ Stefan L. Coleman
                                     One of Plaintiff's Attorneys

          Stefan L. Coleman (NJ Attorney No. 000382009)
          law@stefancoleman.com
          LAW OFFICES OF STEFAN COLEMAN, LLC
          1072 Madison Avenue, Suite 1
          Lakewood, New Jersey 08701
          Tel: 877.333.9427
          Fax: 888.498.8946

          Jay Edelson*
          jedelson@edelson.com
          Rafey S. Balabanian*
          rbalabanian@edelson.com
          Ari Scharg*
          ascharg@edelson.com
          John C. Ochoa*

jochoa@edelson.com
Mark Eisen*
meisen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Motion for admission *pro hac vice* to be filed.

18