# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL DOBKIN, individually and on behalf of all others similarly situated, | Case No. 2:14-cv-01989-WHW-CLW |
| Plaintiff, | Judge William H. Walls |
| v. | Magistrate Judge Cathy L. Waldor |
| ENTERPRISE FINANCIAL GROUP, INC., a Texas corporation, and PRECISE ENTERPRISES LLC d/b/a Precise Auto Protection, a California limited liability company, | |
| Defendants. | |

## PLAINTIFF DOBKIN'S OPPOSITION TO DEFENDANT
## ENTERPRISE FINANCIAL GROUP, INC.'S MOTION TO DISMISS

Stefan L. Coleman (No. 382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427
Fax: 888. 498.8946

Jay Edelson (*Pro Hac Vice* to be filed)
jedelson@edelson.com
Rafey S. Balabanian (*Pro Hac Vice* to be filed)
rbalabanian@edelson.com
Ari J. Scharg (Admitted *Pro Hac Vice*)
ascharg@edelson.com
John C. Ochoa (Admitted *Pro Hac Vice*)
jochoa@edelson.com

Mark S. Eisen (Admitted *Pro Hac Vice*)
meisen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff Michael Dobkin
and the Putative Class*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

ARGUMENT ..................................................................................................... 4

I.   The Amended Complaint States A TCPA Claim against EFG ................... 5

    A.   The Complaint Alleges that Both Precise and EFG Are Directly
          Liable under the TCPA ........................................................................ 5

    B.   The Complaint Alleges Facts Sufficient to Establish that EFG Is
          Vicariously Liable for Precise's TCPA Violations............................. 7

          1.   *Precise Had Actual Authority from EFG to Make the
              Telemarketing Calls* ................................................................ 10

          2.   *Precise Had Apparent Authority to Make the Telemarketing
              Calls* ......................................................................................... 12

          3.   *EFG Ratified Precise's Conduct* .............................................. 14

II.  **EFG's Argument that Plaintiff Fails to Allege Telemarketing Calls to
    His Cellular Phone Is Nonsensical and Fails as a Matter of Law** ......... 15

III. **Fed. R. Civ. P. 23—and Not New Jersey's State Law Class Action
    Rule—Applies to TCPA Claims Brought in Federal Court** .................. 17

    A.   The Supreme Court Requires TCPA Claims Brought in Federal Court
          to Apply Federal Law—Including Fed. R. Civ. P. 23 ...................... 17

    B.   Every Federal District and Appellate Court Applying *Mims* Have
          Held that Fed. R. Civ. P. 23 Applies to TPCA Claims Brought in
          Federal Court....................................................................................... 19

    C.   Even If this Court Determines that State Law Applies, *Local Baking
          Products* Was Wrongly Decided, as TCPA Claims Are Ideally Suited
          for Class Adjudication ...................................................................... 22

CONCLUSION ............................................................................................... 25

iii

# TABLE OF AUTHORITIES

## Cases

*800-JR Cigar, Inc. v. GoTo.com. Inc.*,
    437 F. Supp. 2d 273 (D.N.J. 2006) ............................................................ 11

*A & L Indus., Inc. v. P. Cipollini, Inc.*,
    Civ. Action No. 02-07598 (SRC), 2013 WL 5503303 (D.N.J.
    Oct. 2, 2013) ............................................................................................ 23

*Am. Copper Brass, Inc. v. Lake City Indus. Prods., Inc.*,
    --- F.3d ---, 2014 WL 3317736 (6th Cir. July 9, 2014) ................................ 19

*Bailey v. Domino's Pizza, LLC*,
    867 F. Supp. 2d 835 (E.D. La. 2012) .......................................................... 20

*Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*,
    Civ. No. 11-00011, 2012 WL 4903269 (D.N.J. Oct. 17, 2012) ....... 20, 21, 22

*Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*,
    No. 13-8025 (3rd Cir. Mar. 19, 2013) ........................................................ 22

*Banks v. Independence Energy Group LLC*,
    736 F.3d 660, (2d Cir. 2013) ...................................................................... 19

*Charvat v. Allstate Corp.*,
    --- F. Supp. 2d ---, 2014 WL 866377  (N.D. Ill. Mar. 5, 2014) .......... 9, 10, 13

*City Select Auto Sales, Inc. v. David Randall Associates, Inc.*,
    296 F.R.D. 299 (D.N.J. 2013); ................................................................... 20

*Fitzgerald v. Gann Law Books, Inc.*,
    956 F. Supp. 2d 581 (D.N.J. 2013) ............................................................. 20

*Giovanniello v. ALM Media, LLC*,
    26 F.3d 106 (2d Cir. 2013) ......................................................................... 20

*Goodrich Management Corp. v. Afgo Mechanical Servs., Inc.*,
    Civ. Nos. 09-43 (WJM), 11-2769 (WJM), 2012 WL 6554221
    (D.N.J. Dec. 14, 2012) ............................................................................... 20

*Green v. Serv. Master On Location Servs. Corp.*,
    07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009)............................ 24

*Hawk Valley, Inc. v. Taylor*,
    --- F.R.D. ---, 2014 WL 1302097 (E.D. Penn. Mar. 31, 2014) ........... 8, 9, 20

*Heidorn v. BDD Mktg. & Mgmt. Co., LLC*,
    C-13-00229 JCS, 2013 WL 6571629 (N.D. Cal. Aug. 19, 2013) ................. 6

*Hickey v. Voxernet LLC*,
    887 F. Supp. 2d 1125 (W.D. Wash. 2012) .................................................... 9

*Hinman v. M and M Rental Center, Inc.*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ......................................................... 24

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*,
    847 F. Supp. 2d 1253 (S.D. Cal. 2012) ....................................................... 10

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the U.S., and the
    States of Cal., Ill., N.C., and Ohio for Declaratory Ruling Concerning the
    Tel. Consumer Prot. Act (TCPA) Rules*,
    28 F.C.C.R. 6574 (2013) ..................................................................... passim

*Jackson's Five Start Catering v. Beason*,
    No. 10-10010, 2012 WL 3205526 (E.D. Mich. July 26, 2012) ................... 20

*Jamison v. First Credit Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013) .................................................................... 9

*Korman v. Walking Co.*,
    503 F. Supp. 2d 755 (E.D. Pa. 2007) ......................................................... 16

*Kramer v. Autobytel*,
    759 F. Supp. 2d 1165 (N.D. Cal. 2010) ...................................................... 10

*Kristensen v. Credit Payment Servs. Inc.*,
    --- F. Supp. 2d ---, 2014 WL 1256035 (D. Nev. March 26, 2014)........ passim

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
  Civ. Action No. 08-3610 (KSH), 2012 WL 6622120 (D.N.J.
  Dec. 19, 2012) ........................................................... 20

*Local Baking Prods., Inc. v. Kosher Bagel Munch., Inc.*,
  421 N.J. Super. 268 (N.J. App. Div. 2011) ........................................... 22, 24

*Mey v. Monitronics Int'l Inc.*,
  959 F. Supp. 2d 927 (N.D.W. Va. 2013)...................................................... 9

*Meyer v. Holley*,
  537 U.S. 280 (2003) ...................................................... 8

*Mims v. Arrow Fin. Servs., LLC*,
  132 S. Ct. 740 (2012) ...................................................... passim

*Myers v. MedQuist, Inc.*,
  Civil No. 05-4608 (JBS), 2006 WL 3751210 (D.N.J. Dec. 20, 2006)......... 16

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
  38 F.3d 1380 (3rd Cir. 1994)...................................................... 3

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*,
  981 F. Supp. 2d 1239 (S.D. Fla. 2013)...................................................... 9

*Reliable Money Order, Inc. v. McKnight Sales Co.*,
  281 F.R.D. 327 (E.D. Wis. 2012)...................................................... 23

*Savanna Grp., Inc. v. Trynex, Inc.*,
  No. 10 C 7995, 2013 WL 4734004 (N.D. Ill Sept. 3, 2013) ........................ 9

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
  559 U.S. 393 (2010) ...................................................... 19

*Small v. Kmart Holding Corp.*,
  No. 12-cv-11062, 2013 WL 1157339 (E.D. Mich. Mar. 20, 2013) ............ 20

*Sparkle Hill, Inc. v. Interstate Mat. Corp.*,
  No. 11-cv-10271 (RWZ), 2012 WL 6589258 (D. Mass.
  Dec. 18, 2012) ...................................................... 23, 24

*Thomas v. Jersey Mortg. Co.*,
    No. 2:13-0648, 2014 WL 60051 (D. N.J. Jan. 7, 2014) .............................. 12

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*,
    1:10-CV-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012) ................ 24

## <u>Statutes</u>

47 C.F.R. § 64.1200 .......................................................................... 5, 6, 23

47 U.S.C. § 227 ................................................................................. passim

## <u>Other Authorities</u>

7AA Charles Alan Wright, Arthur R. Miller & Mary K Kane, *Federal Practice
    and Procedure Civil* § 1785.3 (3d ed. 2005) ................................................ 16

Restatement (Third) of Agency (2006) ....................................... 10, 13, 15

## INTRODUCTION

Plaintiff Michael Dobkin ("Plaintiff") alleges that Defendant Precise Enterprises LLC ("Precise") made telemarketing calls to him and other consumers on behalf of Defendant Enterprise Financial Group, Inc. ("EFG") in order to market and sell EFG's products and services in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). The TCPA was enacted to address the "intrusive invasion of privacy" that results from "[u]nrestricted telemarketing." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012) (quoting congressional findings). Here, Plaintiff's Complaint alleges that Defendants violated the TCPA by calling him more than once in a 12-month period despite his enrollment on the National Do Not Call Registry since December 28, 2011 in violation of § 227(c)(5) (the "Do Not Call Claim").

EFG does not dispute that Plaintiff has sufficiently alleged the elements of the Do Not Call Claim. Instead, EFG moves to dismiss the Complaint on the grounds that Plaintiff fails to allege that EFG made any of the calls at issue. However, the law is clear that sellers, like EFG, can be vicariously liable for telemarketing calls made on their behalf by third-party contractors like Precise. Contrary to EFG's unfounded assertions, the Complaint indisputably alleges the elements of the TCPA violation asserted, and it plausibly alleges EFG's vicarious liability[1] for those violations.

---

[1]    As explained in Section I.A, Plaintiff also alleges that EFG can be held directly liable for the telemarketing calls.

After failing in its pleadings argument, EFG proceeds to make increasingly desperate attacks on Plaintiff's Complaint. EFG first asserts in a hastily constructed one-paragraph argument that Plaintiff cannot request relief for the receipt of unsolicited telemarketing calls to wireless telephone numbers, and thus, the Complaint should be dismissed. But EFG misunderstands either the TCPA's regulations or Plaintiff's cause of action (or perhaps both). Plaintiff brings a single Do Not Call Claim for calls to his landline telephone—Plaintiff's Complaint simply notes that Do Not Call Claims are equally available to both landline and cellular telephone users. Thus, it is unclear what EFG is even trying to argue. To the extent that EFG is attacking class certification by asserting that Plaintiff's Class definition is too broad or that Plaintiff is not an appropriate class representative, this argument is premature, without merit, and—even if timely and meritorious— would not justify dismissal of the Complaint.

Finally, EFG argues that TCPA class actions are not permitted in New Jersey under application of New Jersey's class action statute, and cites a single New Jersey state court case to support its claim. Defendant's argument, however, has been rejected by federal appellate courts and multiple district courts— including five in this District—as being contrary to Supreme Court precedent. EFG cannot distinguish the overwhelming weight of authority directing federal courts to apply federal law—including Fed. R. Civ. P. 23—to TCPA claims pending in federal court. And contrary to EFG's argument, TCPA claims are ideally suited for class adjudication. Consequently, EFG's Motion to Dismiss should be denied.

## BACKGROUND

EFG is a company that sells a variety of consumer-related products and services for automobile dealers and manufacturers, credit unions, banks, and retailers. (Dkt. 1, ¶ 1 [hereinafter Compl.].)[2] To promote its products and services, EFG entered into a contract with Precise whereby Precise would place telemarketing calls to consumers to convince them to buy EFG's after-market auto warranties. (*Id.* ¶ 13–15.) EFG is heavily involved in Precise's sales practices and telemarketing procedures. (Compl. ¶¶ 19-21.) EFG provides "one on one consulting and sales training" to Precise. (*Id.* ¶ 19.) It is also involved in the implementation of Precise's marketing and sales procedures. (*Id.*) EFG provides sales assistance and marketing materials to its clients (including Precise). (*Id.* ¶ 20.) In short, EFG is involved in Precise's marketing of EFG's products and services to the point where they act as a singular entity to sell EFG's auto warranty services through telemarketing. (*Id.* ¶ 21.)

When a Precise telemarketer calls a consumer in a manner consistent with the direction and training of EFG (as described above), its representatives initially identify themselves as "Precise Auto Protection" or "Vehicle Processing Center," or as calling from EFG, on behalf of EFG, or for the purposes of selling EFG's products. (*Id.* ¶ 15.) As the call continues, it becomes obvious that the product

---

[2]     On a motion to dismiss, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn, and view them in them in the light most favorable to the Plaintiff. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384–1385 (3rd Cir. 1994).

offered actually belongs to EFG and that Precise is simply acting as EFG's telemarketing agent, as its representatives encourage consumers to the EFG's website "TheTechChoice.com," which immediately redirects the user to "TechChoice.EFGcompanies.com," a sub-domain of EFG's website. (*Id.* ¶ 15–16.)

EFG was well aware that Precise would place telemarketing calls on EFG's behalf and that such calls were being made to consumers without their prior express consent. (Compl. ¶¶ 14–21, 25, 33.) Nevertheless, EFG accepted the sales from interested customers generated by Precise from the telemarketing calls, and paid Precise a portion of the revenue generated by the sale of an EFG product. (*Id.* ¶ 14.)

Beginning in February 2014, Plaintiff Michael Dobkin received at least four telemarketing calls to his landline telephone from Precise and EFG pitching after-market auto warranties. (Compl. ¶¶ 26–28.) On several occasions, Plaintiff explained to the caller that he was not interested in "renewing" his car's warranty and requested that his number be removed from the call list and that the calls cease immediately. (*Id.* ¶¶ 27–28.) Further, during the time period in which he received these calls, Plaintiff's telephone number was registered with the National Do Not Call Registry. (*Id.* ¶ 31.)

## ARGUMENT

EFG raises three arguments in support of its Motion to Dismiss. First, it argues that Plaintiff's TCPA claims fail because the Complaint does not state a plausible claim that EFG could be directly or vicariously liable for calls Precise made to Plaintiff. Second, EFG argues that Plaintiff cannot get relief for

telemarketing calls made to his cellular phone, and that, for some reason, requires dismissal—although not made explicit, Plaintiff can only surmise that this is an argument against Plaintiff's class allegations. Lastly, EFG claims that the TCPA requires the application of state law, and TCPA violations cannot be brought as class action in New Jersey. All of EFG's arguments fail, and thus, the Court should deny EFG's Motion to Dismiss in its entirety.

## I.      The Amended Complaint States A TCPA Claim against EFG

Plaintiff brings a TCPA claim against EFG. As explained below, the Complaint sufficiently alleges that Precise's conduct satisfies the required elements of a Do Not Call Claim, a violation of § 227(c)(5), and alleges facts sufficient to establish that EFG is directly and vicariously liable for that conduct.

### A.      The Complaint Alleges that Both Precise and EFG Are Directly Liable under the TCPA

Under the TCPA, it is unlawful for an entity to make more than one telephone solicitation in a 12-month period to a telephone number on the National Do Not Call Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c). It also provides for a private right of action to consumers who have "received more than one telephone call within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5). Here, the Complaint alleges that Precise made more than one telephone solicitation in a 12-month period to Plaintiff and other consumers whose numbers had been placed on the National Do Not Call Registry on behalf of EFG. (Compl. ¶¶ 26–32, 45–48.) Although Plaintiff's landline number has been on the National Do Not Call Registry since December 28, 2011, (*Id.* ¶ 31.), he

received at least four calls beginning in February 2014. This is all that is required to state a claim under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c). *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, C-13-00229 JCS, 2013 WL 6571629 (N.D. Cal. Aug. 19, 2013) *report and recommendation adopted*, 2013 WL 6571168 (N.D. Cal. Oct. 9, 2013). As such, the Complaint sufficiently alleges a violation of 47 U.S.C. § 227(c)(5).

Further, Plaintiff pleads sufficient facts to hold not only Precise, but also EFG directly liable for the telemarketing calls Plaintiff received. Although EFG is generally correct when it notes that sellers who hire telemarketers to place calls on their behalf are ordinarily not directly liable under the TCPA (Dkt. 17-1 ["Def. Br."] at 6), EFG fails to note that the Federal Communications Commission has not foreclosed the possibility that a seller (like EFG) can also be held directly liable if they are intimately involved in the telemarketing process. The FCC states that "one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it — by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example." *In the Matter of the Joint Petition Filed by Dish Network, LLC, the U.S., and the States of Cal., Ill., N.C., and Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C.R. 6574, 6583 (2013) [hereinafter *2013 Dish Network Order*].

Such a circumstance is present here. Plaintiff alleges that not only did EFG engage Precise to conduct its telemarketing operations, but that EFG is "heavily involved" with Precise's sales practices and marketing procedures. (Compl. ¶ 21.)

6

In fact, EFG's relationship with Precise is such that EFG "act[s] as an extension" of Precise "providing strategic insights and turnkey services to drive traffic and maximize sales." (Compl. ¶ 20, fig. 6.) In fact, both EFG and Precise's marketing activities are so coordinated as to be indistinguishable from one another. (Compl. ¶ 18.) EFG provides "sales training" "one-on-one training" and "implementation of marketing and sales procedures" for Precise. (Compl. ¶ 19.) Plaintiff alleges that these two Defendants, working together, called him repeatedly, despite the fact that he registered his phone number on the National Do-Not-Call Registry. (Compl. ¶¶ 31-32.)

Accordingly, based on Plaintiff's allegations, which must be taken as true at this stage of the litigation, EFG was so heavily involved in Precise's telemarketing activities that it can be held directly liable for the telemarketing Precise conducted on EFG's behalf.

### B.   The Complaint Alleges Facts Sufficient to Establish that EFG Is Vicariously Liable for Precise's TCPA Violations

Regardless of EFG's direct liability, EFG does not—and indeed, cannot—dispute that the Complaint sufficiently alleges Do Not Call Claims as to Precise, the entity that placed the telephone calls to Plaintiff and other consumers on EFG's behalf. Furthermore, after sufficiently alleging that Precise, in placing unsolicited telemarketing calls, violated the TCPA, the Complaint proceeds to allege facts sufficient to hold EFG vicariously liable for Precise's conduct.

As the Supreme Court has noted, "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability

rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). Thus, like all Congressional tort actions, the TCPA incorporates vicarious liability principles. As a result, a formal agency relationship is sufficient (but not required) to hold a seller liable for the illegal acts of a third-party telemarketer—instead, a plaintiff can rely on ratification or apparent authority to establish a seller's vicarious liability. *See Hawk Valley, Inc. v. Taylor*, --- F.R.D. ---, 2014 WL 1302097, at * 17 (E.D. Penn. Mar. 31, 2014) (acknowledging that a plaintiff can hold sellers vicariously liable through ratification or apparent authority).

Furthermore, the FCC has explicitly stated that a seller "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(c) that are committed by third-party telemarketers." *2013 Dish Network Order* at 6574. As the FCC explained:

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case.

*Id.* at 6588. Courts across the county, including one in this Circuit, have followed the FCC ruling and held that sellers can be held vicariously liable for the unlawful telemarketing practices of their third-party contractors under the TCPA.[3]

In order to plead a plausible claim of vicarious liability, Plaintiff "need not plead . . . every nuance of the relationships among the defendants; indeed, the information necessary to connect all the players is likely in defendants' sole possession." *Kristensen v. Credit Payment Servs. Inc.,* --- F. Supp. 2d ---, 2014 WL 1256035, at *5 (D. Nev. March 26, 2014); *see also 2013 Dish Network Order*, 28 F.C.C.R. at 6592–93 ("Needless to say, nothing in our ruling requires a consumer to prove at the time of their complaint (rather than reasonably allege) that a call was made on the sellers behalf"); *Charvat v. Allstate Corp.*, --- F. Supp. 2d ---, 2014 WL 866377, at *2 (N.D. Ill. Mar. 5, 2014) ("[I]t is defendants, not plaintiff, who can reasonably be expected to know these facts, and plaintiff's allegations, taken together, suffice to entitle him to discovery on the issue of vicarious liability."). The question of whether an agency relationship exists is normally a question of fact. *Kristensen*, 2014 WL 1256035, at *5.

---

[3]     *See, e.g., Hawk Valley, Inc.*, 2014 WL 1302097, at *17; *Savanna Grp., Inc. v. Trynex, Inc.,* No. 10 C 7995, 2013 WL 4734004, at *6 (N.D. Ill Sept. 3, 2013) (finding that the *2013 Dish Network Order* ruling to be the controlling standard of liability under the TCPA); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 96 (N.D. Ill. 2013) (holding that under the Hobbs Act, district courts are bound by the FCC's orders, which are final and controlling); *Mey v. Monitronics Int'l Inc.*, 959 F. Supp. 2d 927, 932–33 (N.D.W. Va. 2013); *Hickey v. Voxernet LLC,* 887 F. Supp. 2d 1125, 1129 (W.D. Wash. 2012).

Despite EFG's arguments to the contrary, this case isn't even a close call—Plaintiff has alleged more than enough facts to plausibly establish that EFG is vicariously liable for the telemarketing calls made on its behalf under three commonly accepted theories of vicarious liability: actual authority, apparent authority, and ratification. Plaintiff alleges that EFG contracted with Precise to make telemarketing calls on its behalf to sell its products and services, authorized Precise to use its trade name, and was intimately involved in Precise's execution of the telemarketing services. District courts across the country have upheld complaints similar to this one in the face of a 12(b)(6) motion to dismiss, and this Court should do likewise.[4]

### 1. Precise Had Actual Authority from EFG to Make the Telemarketing Calls

To hold a party liable for the conduct of a third-party under theory of actual authority, the principal must "manifest[] assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *2013 Dish Network Order* at 6586 (citing Restatement (Third) of Agency § 1.01 (2006)). Actual authority can be sufficiently pleaded through the existence of contractual relationships that direct a third-party to carry out a defendant's

---

[4]    *See, e.g., In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012); *Kramer v. Autobytel*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010) (upholding complaint alleging the defendant "contracted with third-party marketer, who thereafter contracted with [text message transmitter], for the purpose of advertising [the defendant's] products and services through spam text messages"); *Charvat*, 2014 WL 866377, at *2; *Kristensen*, 2014 WL 1256035, at *5.

marketing campaign. *See Kristensen,* 2014 WL 1256035, at *5. Additionally, an actual authority relationship can be demonstrated by evidence that the defendant controlled or had the right to control the telemarketer and the campaign it conducted on the defendant's behalf. *800-JR Cigar, Inc. v. GoTo.com. Inc.*, 437 F. Supp. 2d 273, 281 (D. N.J. 2006) (recognizing that a plaintiff has sufficiently stated a claim for vicarious liability when it alleged that both Defendant and advertisers control the appearance of advertisements on Defendant's search page).

Here, Plaintiff alleges that EFG manifested assent for Precise to act on its behalf when it agreed to a contract with Precise and "outsourced the telesales of its products[.]" (Compl. ¶¶ 11, 13–15, 21.) As the Court in *Kristensen* pointed out, allegations of a contractual relationship are all that are needed to allege an agency relationship at the pleading stage, since details of the relationship between the Defendants are likely in Defendants' sole possession. 2014 WL 1256035, at *5.

Further, Plaintiff also alleges that Precise was subject to EFG's control by claiming that EFG is "heavily involved with Precise Enterprises's sales practices and marketing procedures, and has full visibility into Precise Enterprises' telemarketing practices." (*Id.* ¶ 21.) To refute the assertions regarding its control of Precise's actions, EFG argues that its website cannot provide a basis for an inference that it controlled Precise's conduct because it claims that only original manufacturers, dealers, and lenders can be clients of EFG. (Def. Br. at 11–12.) However, the list that EFG's provides of entities for whom EFG is "driving

11

profitability" are simply examples,[5] and does not constitute an exhaustive nor an exclusionary list of its clients. At the pleading stage, the Court must make all inferences in Plaintiff's favor, and presume the truth of his allegations. *Thomas v. Jersey Mortg. Co.*, No. 2:13-0648, 2014 WL 60051, at *2 (D. N.J. Jan. 7, 2014). EFG's factual disagreements, which it recasts as pleading arguments, should not be considered at this stage.

Even if the Court takes EFG's assertions to be true—that its "clients" are those who purchase EFG's services—the website still represents that EFG ensures "complete compliance for clients with in-depth training, appropriate filing procedures, and superior administration."[6] In order to do so, it necessarily must have control over the third-party marketers that it hires to promote its or its clients' products and services.

Thus, Plaintiff has pleaded sufficient facts to state a plausible claim that Precise acted with EFG's actual authority.

**2.    Precise Had Apparent Authority to Make the Telemarketing Calls**

In addition to pleading actual authority, the Complaint alleges facts sufficient to establish apparent authority. In order to plead that a seller should be held liable for its telemarketing agent's actions under apparent authority, Plaintiff must allege facts showing: (1) a third party—here, Plaintiff and Class Members—

---

[5]    *See* Enterprise Financial Group, Inc. *Who We Serve*, http://efgcompanies.com/who-we-serve.aspx (last visited June 29, 2014).

[6]    *Id.*

had a reasonable belief that the telemarketer had the authority to act on behalf of the principal; and (2) that belief is reasonable and traceable to a manifestation of the principal. *2013 Dish Network Order* at 6586–87 (citing Restatement (Third) of Agency § 1.01).

The *2013 Dish Network Order* provides examples of evidence that indicate when "the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's [TCPA] violations." *2013 Dish Network Order* at 6592. These examples include "access to detailed information regarding the nature and pricing of the seller's products and services," "authority to use the seller's trade name, trademark and service mark," and approval and/or review of the outside entity's telemarketing scripts. *Id.*

Here, Plaintiff alleges that Precise, in promoting EFG's auto warranty products and services used EFG's trade name and directed him to a website owned and operated by EFG. (Compl. ¶¶ 15–16, 29.) This is enough to plausibly allege EFG's vicarious liability for these telemarketing calls. *See Charvat*, 2014 WL 866377, at *2; *Kristensen*, 2014 WL 1256035, at *5 (finding that apparent authority is alleged when a reasonable person would believe that calls were made on seller's behalf).

Next, even if EFG's name was not specifically mentioned during the call, Plaintiff alleges that both EFG and Precise "promote specific types of auto warranty packages over the phone—including the "Basic," "Select," "Choice," and "Premium" packages—which appear on both EFG and Precise's websites. (*Id.* ¶ 17.) Moreover, both websites "contain virtually identical marketing statements for

13

the after-market auto warranties." (*Id.* ¶ 18.) As previously mentioned, the Court must take assumes all facts alleged in the complaint as true and draw all reasonable inferences. Given that the information featured on Defendants' websites are mirror reflections of one another, it is reasonable to infer that EFG gave Precise detailed information about the nature and pricing of its products and services.

Accordingly, Plaintiff alleged facts sufficient to plausibly establish that Precise acted with the apparent authority of EFG—he has stated facts that parallel the examples that FCC expressly declared to "demonstrate that the telemarketer is the seller's authorized representative . . . to make the seller vicariously liable for the telemarketer's [TCPA] violations." *2013 Dish Network Order* at 6592.

### 3.    EFG Ratified Precise's Conduct

Finally, under the TCPA, a seller can be liable for the acts of another if it "ratifies those acts by knowingly accepting their benefits." *2013 Dish Network Order* at 6587.

Here, Plaintiff put forth factual allegations that EFG was aware of Precise's illegal telemarketing practices, (Compl. ¶¶ 11–12, 19–21, 25), and yet, still accepted the benefits of such illegal practices—in this case, the increase in traffic to its website and sales of its auto warranty products and services (*Id.* ¶¶ 14–16, 29). Since EFG received the benefits that Precise's illegal telemarketing practices generated, without dissent, it ratified Precise's actions. *2013 Dish Network Order* at 6587; *see* Restatement (Third) of Agency § 4.01 cmt. f–g; *Kristensen*, 2014 WL 1256035, at *5.

14

Therefore, although Plaintiff only needs to successfully plead one vicarious liability theory to survive EFG's Motion to Dismiss, Plaintiff has properly pleaded three different, well-established theories of vicarious liability under which EFG could be held liable for Precise's TCPA violations.

## II.   EFG's Argument that Plaintiff Fails to Allege Telemarketing Calls to His Cellular Phone Is Nonsensical and Fails as a Matter of Law

For its second argument in support of dismissal, EFG presents a confusing and feeble one-paragraph argument that asserts "the Complaint also seeks relief under the TCPA for alleged unsolicited telemarketing calls to cellular telephones in violation of 47 C.F.R. § 64.122(e)." (sic) (Def. Br. at 15). From this, EFG concludes that Plaintiff cannot sue for calls received on his cellular telephone because he has not alleged such calls, and as a result, these claims must be dismissed.

This argument demonstrates a serious misunderstanding of both Plaintiff's Complaint and the application of the do-not-call regulations. Plaintiff's complaint, which quotes the language of 47 C.F.R. § 64.1200(e), simply makes clear that the protections provided by the National Do-Not-Call Registry are equally applicable to both residential landline phones and wireless telephones. (Compl. ¶ 43.) To be clear, Plaintiff's quotation of this statutory language does not purport to bring a separate claim for calls made his wireless telephone, but rather clarifies that the FCC makes no distinction between cellular phones and landline phones when it comes to violations of the National Do-Not-Call Registry, like the one Plaintiff brings here.

Although far from clear in EFG's brief, it is possible that Defendant's argument, though cloaked in a Motion to Dismiss, is an implicit attack on Plaintiff's class allegations, which seek to represent a class of all individuals who had their telephone number registered with the National Do-Not-Call Registry and who received more than one phone call by or on behalf of Defendants over a 12-month period, irrespective of whether that telephone number was associated with a landline or a cellular phone. (Compl. ¶ 34.) If this is what EFG was actually trying to do, its attempt is procedurally improper and premature. *Myers v. MedQuist, Inc.*, Civil No. 05-4608 (JBS), 2006 WL 3751210, at *4 (D.N.J. Dec. 20, 2006) ("[D]ismissal of class allegations at [the pleading stage] should be done rarely and [] the better course of action is to deny such motion because the shape and form of a class action evolves only through the process of discovery.") (internal citations omitted); *accord Korman v. Walking Co.*, 503 F. Supp. 2d 755 (E.D. Pa. 2007); *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary K Kane, *Federal Practice and Procedure Civil* § 1785.3 (3d ed. 2005) (the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery).

As such, EFG's implicit attack on class allegations should be ignored at this stage because it is procedurally premature, and would require Plaintiff to defend certification before he has even moved to certify a class. And in any event, EFG's arguments are erroneous, as the FCC has already decided that there is no distinction between wireless and landline telephone numbers with respect to Do-Not-Call violations.

**III.     Fed. R. Civ. P. 23—and Not New Jersey's State Law Class Action Rule—Applies to TCPA Claims Brought in Federal Court**

Finally, EFG claims that Plaintiff's Complaint should be dismissed because § 227(b)(3)'s "if otherwise permitted by the laws or rules of a court of a state" language in the TCPA requires federal courts to apply state law to determine whether TCPA cases can be maintained as class actions in federal court. EFG then concludes that New Jersey state law applies in this case, and therefore, under *Local Baking Prods., Inc. v. Kosher Bagel Munch., Inc.*, 421 N.J. Super. 268 (N.J. App. Div. 2011), TCPA claims cannot be brought as class actions.

EFG's argument, however, is untenable in light of the Supreme Court's decision in *Mims v. Arrow Financial Services*, 132 S. Ct. 740 (2012), and has been rejected by virtually every federal court to consider the issue post-*Mims*, including five courts in the District of New Jersey. The fact that EFG even chose to make this argument highlights its desperation. This Court should follow the unanimous view of every federal court to consider this argument and reject it.

Even if this Court diverges from the Supreme Court and other decisions in this District and chooses to apply New Jersey state law, rather that Fed. R. Civ. P. 23, *Local Baking Products* is wrongly decided and does not bar TCPA class actions in New Jersey.

**A.     The Supreme Court Requires TCPA Claims Brought in Federal Court to Apply Federal Law—Including Fed. R. Civ. P. 23**

EFG asserts that the phrase —"A person or entity *may, if otherwise permitted by the laws or rules of court of a State,* bring in an appropriate court of that state," 47 U.S.C. § 227(b)(3) (emphasis added)—requires the application of

state law in TCPA cases filed in federal court. The Supreme Court, however, forecloses EFG's interpretation. In *Mims*, a unanimous Supreme Court held that federal courts possessed subject-matter jurisdiction over TCPA claims. 132 S. Ct. at 745-46. In so holding, the Court also discussed the purpose of the "if otherwise permitted" phrase in § 227(b)(3) the TCPA. The Court stated that "by providing that private actions may be brought in state court 'if otherwise permitted by the laws or rules of court of [the] state,' Congress arguably gave States leeway they would otherwise lack to 'decide for [themselves] whether to entertain claims under the [TPCA]") (internal citation omitted). *Id.* In other words, the Supreme Court didn't see this language as a directive to federal courts to apply state law, but rather that state courts had the flexibility to hear TPCA claims based on their own rules.

The Court also gave its view that TCPA claims pending in federal court were meant to have uniform application. It stated that "TCPA liability depends on a violation of a federal statutory requirement or an FCC regulation, not on a violation of any state substantive law" and that "Congress' design would be less well served if consumers had to rely on 'the laws or rules of court of a state . . . to gain redress for TCPA violations." *See* 132 S. Ct. at 751. This finding goes hand-in-hand with the Supreme Court's opinion in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, which held that federal courts exercising diversity jurisdiction apply Fed. R. Civ. P. 23, even if state law would otherwise preclude the use of the class action procedure. 559 U.S. 393, 416 (2010).

In a futile attempt to narrow the holding in *Mims*, EFG argues that the phrase "if otherwise permitted by the laws or rules of court of a State" requires federal

18

court should conduct a choice-of-law analysis—even in a federal question case such as this one—because the Supreme Court didn't rule on the exact argument it raises. (Def. Br. at 22–24.) It is telling, however, that EFG cannot cite to <u>one case</u> post-*Mims* that applies state law to a federal TCPA claim, or that successfully distinguishes *Mims* on the grounds it urges.[7]

### B. Every Federal District and Appellate Court Applying *Mims* Have Held that Fed. R. Civ. P. 23 Applies to TPCA Claims Brought in Federal Court

Given this strong language by the Supreme Court, it is no surprise that federal courts faced with this issue have uniformly held that Fed. R. Civ. P. 23—and not state law—applies to TCPA litigation pending in federal Court. *See Banks v. Independence Energy Group LLC*, 736 F.3d 660, 661 (2d Cir. 2013) ("Federal Rule of Civil Procedure 23, and not state law, governs when a federal TCPA suit may proceed as a class action."); *Am. Copper Brass, Inc. v. Lake City Indus. Prods., Inc.*, --- F.3d ---, 2014 WL 3317736, at *5 (6th Cir. July 9, 2014) (same). This holding has been echoed in numerous district court opinions,[8] including <u>five</u>

---

[7]     EFG also claims it is significant that *Mims* was not a class action lawsuit. (Def. Br. at 22.) But the Court in *Mims* expressly noted (without hesitation) that most TCPA claims pending in federal court <u>are</u> class action lawsuits. 132 S. Ct. at 753.

[8]     Courts across the country have also uniformly held that the "if otherwise permitted" language in § 227(b)(3) does not direct federal courts to apply state law and rules of procedure in TCPA cases. *Giovanniello v. ALM Media, LLC*, 26 F.3d 106, 115 (2d Cir. 2013); Hawk *Valley,* 2014 WL 1302097, at *12; *Jackson's Five Start Catering v. Beason*, No. 10-10010, 2012 WL 3205526, at *4 (E.D. Mich. July 26, 2012); *Small v. Kmart Holding Corp.*, No. 12-cv-11062, 2013 WL 1157339, at *3 (E.D. Mich. Mar. 20, 2013) (noting that in light of *Mims*, "there is no room for a

in this district. *See Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, Civ.

No. 11-00011, 2012 WL 4903269, at *7 (D.N.J. Oct. 17, 2012); *Goodrich*

*Management Corp. v. Afgo Mechanical Servs., Inc.*, Civ. Nos. 09-43 (WJM), 11-

2769 (WJM), 2012 WL 6554221, at *3 (D.N.J. Dec. 14, 2012); *Landsman & Funk,*

*P.C. v. Skinder-Strauss Assocs.*, No. 08-3610 (KSH), 2012 WL 6622120, at *9

(D.N.J. Dec. 19, 2012); *City Select Auto Sales, Inc. v. David Randall Associates,*

*Inc.*, 296 F.R.D. 299, 311-12 (D.N.J. 2013); *Fitzgerald v. Gann Law Books, Inc.*,

956 F. Supp. 2d 581, 582 (D.N.J. 2013) ("Judges in this District have had occasion

to examine this issue on several occasions. Applying U.S. Supreme Court

precedent, those cases have uniformly held that Rule 23, not state law, governs the

viability of a class action brought under TCPA in federal court.").

The court in *Bais Yaakov* faced a nearly identical situation when the

defendant claimed that New York state law should apply to TCPA claims brought

in federal court, and because New York state law barred class actions for claims

for statutory damages, the case should be dismissed. 2012 WL 4903269, at *1. The

defendant's arguments mirrored those of EFG—it argued that any suit brought

under the TCPA should be governed by state law, and offered various examples of

statutes where Congress has made similar provision, paying particular attention to

the Federal Tort Claims Act. *Id.*[9]

_____

court to determine that any state class action law could preclude the application of
Rule 23 to a TCPA class action."); *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d
835 (E.D. La. 2012).

[9]   EFG's citations to various federal statutes—such as the Federal Tort Claims
Act, the Medical Treatment and Active Labor Act, and the Financial Institutions

The court rejected the Defendant's arguments, and firmly held that federal law, including federal procedural law, should control the adjudication of TCPA claims in federal courts due to the preference for Federal Rules of Procedure in federal court and desire for uniformity in enforcement. *Id.* at *7. The court explained:

> Congress likely meant § 227(b)(3) to serve as a permissive grant to states to enforce the statute. On this reading, there is no direct conflict between Rule 23 and state law such as to imply a congressional limitation on Rule 23, because the section at issue applies to a suit brought in state court, not federal. As in other instances where the Supreme Court enforces a federal statutory cause of action, federal law—substantive and procedural—applies. In light of *Mims*, a case bolstering the previous *Shady Grove* opinion favoring application of Rule 23 in federal court cases unless specifically barred by Congress, this Court does not believe it appropriate to interpret the text of §227(b)(3) as requiring a federal court to follow state law.

*Id.* at *2. Accordingly, the court ruled that the New York state law barring plaintiff's TCPA class claims was inapplicable, and thus, dismissal of those class claims as a matter of law was inappropriate. *Id.* at *7.[10] This Court should follow

---

Reform, Recovery and Enforcement Act, are irrelevant to the issue before the Court, because not only is the statutory language in those statutes different from the TCPA, but the Supreme Court clarified the proper interpretation of § 227(b)(3) in *Mims*.

[10]     Although the District Judge granted the defendant leave for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), the Third Circuit denied the petition. *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, No. 11-cv-00011, 2013 WL 663301 (D.N.J. Feb. 21, 2013) *leave to appeal denied by* 13-8025 (3d Cir. May 8, 2013). From this, it is reasonable to infer that the Third Circuit believes that the District court's reasoning was correct.

the overwhelming weight of authority and likewise find that Fed. R. Civ. P. 23 applies to this TCPA class action lawsuit brought in federal court.

**C.**     **Even If this Court Determines that State Law Applies, *Local Baking Products* Was Wrongly Decided, as TCPA Claims Are Ideally Suited for Class Adjudication**

Even if this Court decides to break course with every other federal court post-*Mims* and to apply New Jersey state law—and not Fed. R. Civ. P. 23—to Plaintiff's TCPA claim, EFG's reliance on *Local Baking Prods., Inc. v. Kosher Bagel Munch, Inc.* is misplaced. Defendant argues that the holding in *Local Baking Products*—that TCPA claims could never meet the superiority test of New Jersey class action Rule 4:32-1 because the statutory award of $500 provided enough incentive for individuals to pursue his or her claims—forecloses Plaintiff's claim.[11] (Def. Br. at 17–18.) In making this argument, however, EFG completely overlooks a recent decision in this very District that concluded otherwise, and certified a class of individuals that received junk faxes in violation of the TCPA. *See A & L Indus., Inc. v. P. Cipollini, Inc.*, Civ. Action No. 02-07598 (SRC), 2013 WL 5503303 (D. N.J. Oct. 2, 2013).

---

[11]     As noted in Section II *supra*, Rule 12(b)(6) is not a proper vehicle to attack class allegations. EFG's argument that Plaintiff cannot bring his TCPA claim on a class basis is in actuality just another an attack on Plaintiff's class allegations—brought under the guise of Rule 12(b)(6). For the same reasons explained in Section II above, such an argument is premature.

In *A & L Industries, Inc.*, the court harshly criticized *Local Baking Products* for being wrongly decided on both a procedural[12] and substantive level. *See* 2013 WL 5503303, at *4. The court points out that the court in *Local Baking Products* incorrectly ruled on the superiority issue on the assumption that "because the $500 considerably exceeds a TCPA plaintiff's real or sustained damages, [the] plaintiff is sufficiently incentivized to act" on his own, rather than through the class action mechanism. *Id.* This assumption is flawed because the difference between actual and statutory damages does not change the fact that "the statutory recovery is, in absolute terms, still minimal." *Id.*

Similarly, every federal court to have addressed the *Local Baking Products* decision on the superiority issue has rejected its reasoning and held that TCPA claims are certifiable under Rule 23.[13] For instance, the Court in *Sparkle Hill, Inc. v. Interstate Mat. Corp.* rejected the *Local Baking Products* decision and found that the use of the class action procedure to resolve TCPA claims is superior regardless of whether the statutory damages are high enough because (1) if the statutory damages were high enough, a single class action is superior to thousands of individual claims that would arise and (2) if the statutory damages are too low, a

---

[12]    On a procedural level, the court goes through the same analysis as addressed in *supra* III.A-B.

[13]    *See, e.g., Sparkle Hill, Inc. v. Interstate Mat. Corp.,* No. 11-cv-10271 (RWZ), 2012 WL 6589258, at *4 (D. Mass. Dec. 18, 2012); *Reliable Money Order, Inc. v. McKnight Sales Co.,* 281 F.R.D. 327, 338–39 (E.D. Wis. 2012) (holding that TCPA class actions can be maintained under Rule 23 and rejecting the argument congressional intent was to allow TCPA claims be pursued in small claims court).

class action would be superior as a mechanism for consumers who would otherwise not bring claims. 2012 WL 6589258, at *4 (D. Mass. Dec. 18, 2012).[14]

Numerous other Courts to address the superiority issue in TCPA class actions have likewise held that class adjudication is superior to thousands of individual lawsuits.[15] Hence, should the Court even reach this issue, it should decline EFG's invitation to adopt the flawed reasoning of the *Local Baking Products* decision and find that TCPA claims are not precluded from being brought as class actions in New Jersey.

---

[14]    The *Local Baking Products* decision is similarly flawed in in its overreliance on statements of Congressional intent in deciding that Congress intended that TCPA claims be brought as individual actions. *See* 421 N.J. Super. at 273-74, 275-76. Specifically, the court emphasized the statements of Senator Hollings, who said that setting damages at $500 would provide sufficient motivation for consumers to bring suit. *Id.* The Supreme Court in *Mims*, however, rejected the overreliance on statements of congressional intent when interpreting statutory provisions. 132 S. Ct. at 752 ("the views of a single legislator, even a bill's sponsor, are not controlling.")

[15]    *Hinman v. M and M Rental Center, Inc.,* 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) (emphasizing the relatively small individual value of a TCPA plaintiff's claim and concluding that a TCPA class satisfied Rule 23(b)(3)); *Green v. Serv. Master On Location Servs. Corp.*, 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) ("Resolution of the issues on a classwide basis, rather than thousands (or zero) individual lawsuits is an efficient use of judicial resources."); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, 1:10-CV-253, 2012 WL 4127824 (W.D. Mich. Sept. 19, 2012) ("The Court agrees that resolution of the TCPA claims on a classwide basis, rather than through thousands of individual lawsuits, is an efficient use of judicial resources and represents the superior method of handling the claims."); *Kristensen*, 2014 WL 1256035, at *10.

## CONCLUSION

For the above and foregoing reasons, Plaintiff Michael Dobkin, individually and on behalf of all others similarly situated, respectfully requests that the Court enter an Order: (i) denying EFG's Motion to Dismiss in its entirety, (ii) requiring EFG to answer Plaintiff's Class Action Complaint, and (iii) providing such other and further relief as the Court deems equitable and just.[16]

Respectfully submitted,

**MICHAEL DOBKIN**, individually and on behalf of all others similarly situated,

Dated: July 14, 2014

By: _____/s/  Stefan L. Coleman_____
        One of Plaintiff's Attorneys

Stefan L. Coleman (No. 382009)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1072 Madison Avenue, Suite 1
Lakewood, New Jersey 08701
Tel: 877.333.9427
Fax: 888. 498.8946

Jay Edelson (*Pro Hac Vice* to be filed)
jedelson@edelson.com
Rafey S. Balabanian (*Pro Hac Vice* to be filed)
rbalabanian@edelson.com

---

[16]    In the event that the Court finds that Plaintiff's claims are in any way insufficiently pleaded under Rule 8 of the Federal Rules of Civil Procedure, Plaintiff respectfully requests leave to file an amended complaint.

Ari J. Scharg (Admitted *Pro Hac Vice*)
ascharg@edelson.com
John C. Ochoa (Admitted *Pro Hac Vice*)
jochoa@edelson.com
Mark S. Eisen (Admitted *Pro Hac Vice*)
meisen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff Michael Dobkin
and the Putative Class.*

## <u>CERTIFICATE OF SERVICE</u>

I, Stefan L. Coleman an attorney, hereby certify that on July 14, 2014, I served the above and foregoing ***Plaintiff Dobkin's Opposition to Defendant Enterprise Financial Group, Inc.'s Motion to Dismiss*** by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 14th day of July 2014.

/s/  Stefan L. Coleman
Stefan L. Coleman